**EDWARD F. WESTFIELD, P.C.**
EDWARD F. WESTFIELD, ESQ . (NYS BAR NO. 1718287)
6218 RIVERDALE AVENUE
RIVERDALE, NY 10471
T: (718) 601-1100
F: (212) 601-1200
E: EFW@EFWPC.COM

–AND–

**Hyderally & Associates, P.C.**
TY HYDERALLY, ESQ. (NJSBA 85013)
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
E: TYH@EMPLOYMENTLIT.COM

Attorneys for Plaintiff: Luis Peña

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUIS PEÑA,** | **CIVIL ACTION No:** |
| **PLAINTIFF,** | |
| **VS.** | **COMPLAINT AND JURY DEMAND** |
| **BLUE BEVERAGE GROUP, BRENDA ORTIZ, in her official and individual capacities, JOHN DOES 1-10, and XYZ CORP. 1-10,** | |
| **DEFENDANTS.** | |

Plaintiff, Luis Peña ("Peña" or "Plaintiff") who resides at 53 West St, First Floor, Haverstraw, New York, 10927, by way of this Complaint against Defendants, Blue Beverage Group ("Blue Beverage"), Brenda Ortiz ("Ortiz"), in her individual and official capacity, John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby says:

## I.  Nature of Action, Jurisdiction, and Venue

1.  This is an action seeking equitable and legal relief for: (1) The Americans with Disabilities Act of 1990 ("ADA"), United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26), codified at 42 U.S.C. § 12101 *et seq.* (disability discrimination);  (2) The Americans with Disabilities Act of 1990 ("ADA"), United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26), codified at 42 U.S.C. § 12101 *et seq.* (failure to accommodate);  (3) The Americans with Disabilities Act of 1990 ("ADA"), United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26), codified at 42 U.S.C. § 12101 *et seq.* (retaliation); (4) a violation of the New York State and New York City Human Rights Law and Civil Rights Law, N.Y. Exec. Law § 290 *et seq.* and N.Y.C. Admin. Code § 8-101 *et seq.* (disability discrimination/harassment); (5) a violation of the New York State and New York City Human Rights Law and Civil Rights Law, N.Y. Exec. Law § 296(e) and N.Y.C. Admin. Code § 8-107(7) (retaliation); and, (6) defamation.

2.  This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3.  Venue is appropriate in this court since Plaintiff lived and worked in Rockland County, New York, Defendants have an office and do business in Rockland County, New York; and the causes of action occurred in Rockland County, New York.

## II.  Parties

4.  Plaintiff worked as a pallet handler for Blue Beverage's New York worksite, located at 152 Broadway, Haverstraw, NY 10927.

5.  Blue Beverage employed Plaintiff to perform work related duties in the State of New York.

6.  Blue Beverage is a private label supplier that manufactures "ready to drink" beverages that are made to remain "shelf-stable."

7.  During the relevant time period, Ortiz was the Human Resources Manager of Defendants' New York worksite.

2

8.  Additionally, Ortiz was a senior management level employee who controlled plaintiff's workplace and supervised plaintiff and (1) aided the employer in performing a wrongful act that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

9.  At all times referred to in this complaint, employees of the Corporate Defendant(s), who are referred to herein, were acting within the scope of their employment at the workplace during working hours or the Corporate Defendant(s) ratified, embraced and added to their conduct to the extent that their actions went beyond the scope of their employment.

### III.  Factual Allegations

10.  Peña began working for Blue Beverage's Belleville location in June 23, 2014 at a salary of $10.00 per hour as a "pusher."

11.  Plaintiff performed his job duties in an exemplary manner.

12.  Peña met Ortiz, Blue Beverage's Human Resources manager, the day he was hired.

13.  Ortiz noticed that Peña was wearing special prescription sunglasses and asked him what was wrong with his eyes.

14.  Peña explained that in 2007 he got into a serious motorcycle accident. As a result, his face had been permanently disfigured and he lost an eye. He also explained that the accident left him in a comma for 51 days and, as a result, he suffered from occasional seizures.

15.  Ortiz asked Peña if he had any treatment for his condition.

16.  Peña told Ortiz that he took 500 mg of Levetiracetam twice a day in order to prevent seizures.

17.  Surprised about the seemingly high dosage, Ortiz commented that the medication must be very strong.

18.  She then asked Peña if he could keep up with the demands of his job since his shift was from 8 p.m. to 6 a.m.

19.  Peña explained that he was used to working at night because his previous job schedule was from 11:15 p.m. until 7 a.m.

20.  Peña's job duty as a pusher consisted of transporting large containers of beverages in and out

3

of high-heat cookers located in a small, unventilated room in Blue Beverage's factory.

21.    Because this small room was completely enclosed, the high temperatures emanating from the cookers would heat up Peña's work station up to 138 degrees Fahrenheit.

22.    In fact, Peña and several other employees had complained to their manager, Mojo (last name unknown), about the unbearable heat and asked that something be done to reduce the temperature.

23.    These complaints were ignored and Peña and his coworkers continued to endure the heat, working completely drenched in sweat.

24.    On July 7, 2014, at about 3 a.m., the temperature in Peña's work station was so high that he fainted.

25.    Peña regained consciousness a few minutes later, surrounded by his coworkers and brother, Alberto Segura ("Segura"), who also worked for Blue Beverage.

26.    After a few more minutes, Peña said that he was feeling better and could get back to work.

27.    Segura, however, told him to remain sitting down and called Mojo to inform him of what happened.

28.    Mojo told Segura to take Peña home so he could get some rest.

29.    The next morning, Ortiz found out about the incident, called Peña at his home, and told him to meet her at her office right away, even though Mojo had sent Peña home to get some rest.

30.    Peña left for Ortiz's office immediately and arrived at approximately 9:30 a.m.

31.    Ortiz started grilling Peña in an aggressive fashion about what occurred the night before.

32.    Peña explained that he fainted, but noted that he was fine.

33.    Ortiz then started asking detailed questions about Peña's medications, his medical condition, and whether he was taking his medication.

34.    Taken aback, Peña explained that he always took his medication twice a day and that he fainted because of the extreme heat.

35.    Ortiz then informed Peña that Blue Beverage could not maintain his employment as he had medical problems.

36.    Shocked, Peña pleaded with Ortiz, saying that he had a family to take care of and that he could not lose his job just because he fainted.

37. Ortiz demanded to know Peña's doctor's contact information, called Yanina Kotlyar, M.D. ("Dr. Kotlyar"), made an appointment for Peña to see him that same day, and informed Peña that she would make a final decision on whether or not to fire him based on Dr. Kotlyar's examination results.

38. Peña met with Dr. Kotlyar who opined that the only reason Peña needed the reasonable accommodation of time off from work was due to the extreme and unbearable heat that the workers were subjected to. (Exhibit "1").

39. Peña gave Ortiz Dr. Kotlyar's accommodation request (Exhibit "1") and Dr. Kotlyar's diagnosis that Peña's medication be increased to control his seizures to Defendants. (Exhibit "2").

40. Ortiz read Dr. Kotlyar's documentation and merely informed Peña that she did not know if the company could allow Peña to return to work. Ortiz stated that she would speak to Mojo and get back to Peña and that in the interim Peña should go home and await further contact.

41. Three days later, Defendants installed ventilators and extractors in the room with the cookers to reduce the heat to manageable levels.

42. Subsequently, Peña called Ortiz to ask when he could return to work.

43. Ortiz stated that nothing was available.

44. Peña kept calling every day hoping that he could return to work.

45. Finally, Peña realized that Ortiz did not want to give him his job back due to his medical condition. Thus, he decided to speak directly with Mojo.

46. Peña knew that Mojo frequently ate lunch at a restaurant called "Los Amigos."

47. Thus, Peña went to the restaurant with his brother, Segura, and approached Mojo.

48. Segura and Peña explained the situation in detail to Mojo and plead with Mojo to allow Peña to return to work.

49. Mojo told Peña to return to work the next day to commence working as a pallet handler, once he completed a two week training program.

50. Peña returned to work and began training, but it only took him three days to complete his two week training.

51. Once Ortiz saw that Peña had returned to work, she immediately began to harass him about

his medical condition and require that he provide constant updates of his medical condition.

52. Ortiz harassed Peña at work and made fun of his physical appearance in the presence of other employees.

53. Peña explained that his face had been damaged because of the motorcycle accident he had been in.

54. Ortiz simply laughed and walked away.

55. A few weeks thereafter, Mojo left the company and Ben (last name unknown) became Peña's new supervisor.

56. In approximately early January 2015, Dr. Kotlyar informed Peña that he had diabetes.

57. The next day, Peña told Ben that he was diabetic.

58. Ben shared the information with Ortiz who immediately approached Peña to ask him questions about his diabetic medical condition.

59. Ortiz told Peña that he had too many health problems and asked if his doctor gave him any medication.

60. Peña responded that his doctor had not prescribed him any medicine for his diabetic medical condition and took issue with Ortiz' derogatory comment about his medical condition.

61. In approximately March 2015, Ben agreed that Peña should get a raise to $14.00/hour, effective April 2015, to make his salary commensurate with that of his co-workers. Ben advised Peña to inform Ortiz of Ben's decision.

62. Peña approached Ortiz as he was directed to do so.

63. Despite the fact that Ben was Peña's supervisor, Ortiz informed Peña that she was refusing to give him a raise.

64. Peña protested Ortiz' actions and she responded by advising him words to the effect, "I'm not going to give it to you, and you know why? Because you don't speak English. In fact, not only are you not getting the raise, you're fired."

65. Peña again pleaded with Ortiz, saying that he had not done anything wrong, that he never made any mistakes while working, and that most people in the factory did not speak English.

66. When Ortiz refused to change her mind, Plaintiff asked her if she was worried about getting the company in trouble for firing someone illegally.

67.     Ortiz said words to the effect, "We can do whatever we want. The owners of this company are Jews and Jews in this country can do whatever they want, even more so than Americans. The Jews don't pay taxes while Americans do. They're not going to get in trouble and nothing is going to happen to me."

68.     Peña kept begging for his job, telling Ortiz that he has children to support.

69.     Ortiz finally relented but advised Peña that it was a matter of time before she terminated him.

70.     In April 2015, Peña fainted at work.

71.     The next day, Ortiz confronted Peña about him fainting.

72.     Peña told her that his sugar levels must have dropped, causing him to faint, but noted that he was fine and back at work.

73.     A few days later, Defendants hired Oliver (last name unknown) and directed that Peña train him on how to perform Peña's job duties.

74.     Ortiz approached Peña and informed him that it was very important that he train Oliver to do his job well.

75.     On or about April 20, 2015, Peña approached Ben and told him about his ongoing situation with Ortiz and Ortiz' discriminatory and retaliatory actions towards him due to his medical condition.

76.     Ben promised to speak to Ortiz.

77.     The following day, Peña arrived at work to see Ben standing outside. Ben and a coworker informed Peña not to go into the office as Ortiz decided to fire him and replace him with Oliver.

78.     Defendants' animus towards Peña and hateful actions continued in their response to Peña's application for unemployment benefits.

79.     Ortiz had the audacity to lie to unemployment and inform them that Peña had abandoned his job voluntarily.

80.     Defendants' comments were knowingly false and made with malice and communicated to a third party to attempt to harm Peña.

81.     Peña explained that Defendants' comments were untrue to the unemployment hearing officer and eventually received his benefits.

82.  At the time of his termination, Peña's hourly wage was $11.00 an hour, worked on average 40 hours a week, and, but for his termination, he would have received a raise.

83.  These benefits of employment make up Peña's claim for damages.

## FIRST CLAIM FOR RELIEF
### (The Americans with Disabilities Act of 1990 ("ADA")
### United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)
### codified at 42U.S.C. § 12101 *et seq.)*
### (Disability Discrimination)

84.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

85.  The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by discriminating against Plaintiff because of Plaintiff's disability.

86.  Plaintiff suffered from a disability and/or was perceived as being disabled.

87.  Defendants' actions constitute disability discrimination/harassment in violation of the ADA.

88.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

89.  Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## SECOND CLAIM FOR RELIEF
### (ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)
### codified at 42U.S.C. § 12101 *et seq.)*
### (Failure to Accommodate)

90.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

91.  Plaintiff advised Defendants of his disability/medical condition and requested the reasonable accommodation of working in a work environment of a lesser temperature.

92.  Defendants refused to accommodate Plaintiff and refused to allow him to return to work.

93.  Further Defendants refused to engage in an interactive dialogue to discuss an alternative accommodation to allow Plaintiff to return to work.

94.  The foregoing facts and circumstances demonstrate that Defendants have violated the ADA.

95.  As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

96.  Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### THIRD CLAIM FOR RELIEF
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)
codified at 42U.S.C. § 12101 *et seq.*)
(Failure to Engage in the Interactive Dialogue)**

97.  Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

98.  Plaintiff advised Defendants of his disability/medical condition and requested the reasonable accommodation of working in a work environment of a lesser temperature.

99.  Defendants refused to accommodate Plaintiff and refused to allow him to return to work.

100.  Further Defendants refused to engage in an interactive dialogue to discuss an alternative accommodation to allow Plaintiff to return to work and failed to respond to Plaintiff's request to work in a work environment that was under 86 degrees farenheit.

101.  The foregoing facts and circumstances demonstrate that Defendants have violated the ADA.

102.  As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional

distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

103.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### THIRD CLAIM FOR RELIEF
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42 U.S.C. § 12101 *et seq.*)**
**(Retaliation)**

104.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

105.    The foregoing facts and circumstances demonstrate that Defendants have violated the ADA, by engaging in acts of reprisal and/or retaliation because Plaintiff asserted his rights under the ADA and/or complained of disability discrimination/harassment and/or retaliation.

106.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

107.    Furthermore, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### FOURTH CLAIM FOR RELIEF
**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Disability Discrimination/Harassment)**

108.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

109.   The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by discriminating and harassing Plaintiff due to his medical condition/disability/handicap and retaliating against Plaintiff for complaining about such discrimination and harassment.

110.   As a direct and proximate result of Defendants actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### SECOND CLAIM FOR RELIEF
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42U.S.C. § 12101 *et seq.*)**
**(Failure to Accommodate)**

111.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

112.   Plaintiff advised Defendants of his disability/medical condition and requested the reasonable accommodation of working in a work environment of a lesser temperature.

113.   Defendants refused to accommodate Plaintiff and refused to allow him to return to work.

114.   Further Defendants refused to engage in an interactive dialogue to discuss an alternative accommodation to allow Plaintiff to return to work.

115.   The foregoing facts and circumstances demonstrate that Defendants have violated the ADA.

116.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living,

11

and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

117.   Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### THIRD CLAIM FOR RELIEF
**(ADA, United States (Pub.L. 101-336, 104 Stat. 327, enacted 1990-07-26)**
**codified at 42U.S.C. § 12101 *et seq.)***
**(Failure to Engage in the Interactive Dialogue)**

118.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

119.   Plaintiff advised Defendants of his disability/medical condition and requested the reasonable accommodation of working in a work environment of a lesser temperature.

120.   Defendants refused to accommodate Plaintiff and refused to allow him to return to work.

121.   Further Defendants refused to engage in an interactive dialogue to discuss an alternative accommodation to allow Plaintiff to return to work and failed to respond to Plaintiff's request to work in a work environment that was under 86 degrees farenheit.

122.   The foregoing facts and circumstances demonstrate that Defendants have violated the ADA.

123.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

124.   Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### FIFTH CLAIM FOR RELIEF

**(New York State and New York City Human Rights Law and Civil Rights Law)**
**(Retaliation)**

125.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

126.    The foregoing facts and circumstances demonstrate that Defendants have violated the New York State and New York City Human Rights Law and Civil Rights Law by retaliating against Plaintiff for taking medical leave and/or requesting accommodation, for suffering from a medical condition, and/or for complaining of discriminatory and/or retaliatory and/or harassing treatment.

127.    As a direct and proximate result of Defendants actions, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life.  Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care.  Plaintiff's damages have been experienced in the past, and they will continue into the future.

128.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.


**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against defendants, jointly and severally, as follows:

      A.    Compensatory damages;

      B.    Damages for lost wages and benefits, back pay, front pay (or reinstatement);

      C.    Damages for humiliation, mental and emotional distress;

      D.    Statutory damages, if applicable;

      E.    Punitive damages and or liquidated damages where permitted by law;

      F.    Attorneys' fees and costs of suit;

      G.    Lawful interest - including pre-judgment interest on lost wages;

H.    Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

I.    Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

14

DATED:       June 27, 2016

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff*

By:      */s/ Ty Hyderally*
        TY HYDERALLY, Esq.
        For the Firm

Edward F. Westfield, P.C.
*Attorneys for Plaintiff*

By:      */s/ Edward F. Westfield*
        EDWARD F. WESTFIELD, Esq.
        For the Firm

T:\1Law Offices of Ty Hyderally\Pena Luis\Pleadings\091415.COM.doc

15

SW CNYRxPad/M7S1497  P Pad 8 of 20 6/11/2014  N

## OFFICIAL NEW YORK STATE PRESCRIPTION

1

VOID VOID VOID
VOID VOID VOID

YANINA KOTLYAR MD
LIC: 204324
NPI: 1396717153

20 SQUADRON BLVD SUITE 550 NEW CITY, NY  10956 (845) 634-8800

PRACTITIONER DEA NUMBER

Patient Name _Pena Lill_    Date _7/8/14_

Address

City          State        Zip        Age        Sex  [M] [F]

Rx  To whom it may
concern Mr Penal
cannot work in
extreme environment
Temperature not more

LEP   Preferred Language

Prescriber Signature  X _____

THIS PRESCRIPTION WILL BE FILLED GENERICALLY UNLESS PRESCRIBER WRITES 'daw' IN THE BOX BELOW

REFILLS  NO. (0-5)
Refills:          ORSXLM 50

PHARMACIST
TEST AREA            Dispense As Written

SW CNTRxPadMV751497  P  Pad 8 of 20 6/11/2014  N

## OFFICIAL NEW YORK STATE PRESCRIPTION   1

YANINA KOTLYAR MD
LIC: 204324
NPI: 1396717153

20 SQUADRON BLVD SUITE 550 NEW CITY, NY   10956 (845) 634-8800

PRACTITIONER DEA NUMBER

Patient Name _____ Date _____

Address _____

City _____ State _____ Zip _____ Age _____ Sex M F

Rx   *To whom it may*
*concern Mr Peda*
*cannot be*
*exposed to heat*
LEP ☐ Preferred Language _____
*or max*

Prescriber Signature X _____   MAXIMUM DAILY DOSE
(controlled substances only)

THIS PRESCRIPTION WILL BE FILLED GENERICALLY UNLESS PRESCRIBER WRITES 'daw' IN THE BOX BELOW

REFILLS ☐ None
Refills: _____

ØRSXLM 76

PHARMACIST
TEST AREA:

Dispense As Written